## STEECE v. MILLER, Internal Revenue Collector.

### No. 2652.

District Court, S. D. Ohio, E. D.

Dec. 31, 1929.

Booth, Keating, Pomerene & Boulger, of Columbus, Ohio, for plaintiff.

H. E. Mau, of Cincinnati, Ohio, and Hugh K. Martin, of Columbus, Ohio, for defendant.

HOUGH, District Judge.

The plaintiff sues for the recovery of taxes paid under protest and after application for refund had been denied, assessed by the Treasury Department on the basis of profits inuring to the taxpayer by reason of the sale by him of stock in the Ironton Portland Cement Company.

The taxable profit found by the government was $61,250. This grew out of the sale of 592 shares of the common stock of that company, owned by the plaintiff in the year 1920, to the Lasalle Cement Company. The jury was waived, and the issues were tried to the court.

Through negotiations begun in 1919 and completed in April of 1920, the stock of the Ironton Cement Company, including plaintiff's stock, was sold to the Lasalle Cement Company at the agreed price for the common stock of $200 per share. The stock was paid for by the purchasing company paying $100 per share or the par value of the common stock in cash, and in addition thereto paying to plaintiff half a share of common stock of the purchasing company for every share of the common stock of the selling company received. Plaintiff under this contract therefore received $59,200 in cash and 292 shares of a par value of $100 a share of the common stock of the Lasalle Cement Company.

In his individual return for 1920, the plaintiff did not charge himself with any profit on the transaction. In 1921 he filed an amended return, in which he charged himself with a profit of $25,100 by reason of this transaction. In 1924 the finding was made by the government agents that the profit of the transaction on which the tax should be computed was $61,250.

The plaintiff acquired 122 shares of the stock under consideration prior to March 1, 1913, and the remainder subsequent to that date, and of the remainder he acquired 120 shares by inheritance in the year 1918. The first stock was acquired in 1902 by subscription, and the last stock acquired was in 1920, just prior to the sale of his holdings. The stock received by inheritance in 1918 was appraised at par. The 122 shares first acquired were purchased at different times prior to March 1, 1913 at par in fulfillment of his stock subscription. Subsequent to that date he purchased at various times small blocks of the stock from other persons—10 shares at one time at $75 per share, two other purchases aggregating 33 shares at $95

per share, a purchase of 47 shares at $100 per share, and in 1919 250 shares under his original subscription, at $100 per share, and the last block of stock, consisting of 10 shares, at $200 per share. The cost to him, therefore, of his entire holdings of common stock, including that inherited, according to its appraised value, was substantially par, or $100 per share. His contention here is that the market value of the 122 shares, acquired prior to March 1, 1913, was $270 per share, and that the 120 shares acquired in 1918 by inheritance was of a value of $270 per share.

The books of the Ironton Portland Cement Company were not before the court; the same having been lost. Plaintiff's exhibits B, C, and D, were offered, purporting to be balance sheets for the years 1912, 1913, and 1918, taken from the books of the company. It is noticed that these sheets are carbon copies, made upon the stationery of the Alpha Portland Cement Company, of Ironton, Ohio, the paper containing the watermark of that company. The Alpha Company was a stranger to this plant at Ironton until long subsequent to the year 1918; therefore the exhibits do not appear to be genuine, and may not be considered. Therefore there is no documentary evidence before the court tending to show the book value of the stock of the Ironton Portland Cement Company during any of the time under consideration. Oral testimony was submitted, however, tending to establish a value of the 122 shares acquired prior to March 1, 1913, and the 120 shares acquired in 1918 by inheritance, to be in excess of par value. It was also established that prior to 1913, a valuable species of limestone was discovered underlying the company's property, and that the property was also favored with coal, gas, and oil deposits. In addition thereto, other lands had been acquired, and, as the company's business developed through the years, the plant was enlarged and improvements and betterments made to buildings and machinery. Proof of this character was offered and received to influence the value of the stock. As the business developed, as improvements and betterments were added, as expansion took place, and as new raw materials were discovered and developed, the plant value increased. The natural effect of this growth in wealth to the shareholder was neutralized by the gradual increase in capitalization of the corporation; the capital stock initially $50,000 became $350,000. The shares multiplied seven times. Prior to 1913 small dividends were paid some years and

no dividends in other years. During the period from 1911 to 1918, inclusive, eight years, dividends were paid four of these years, and no dividends were paid four of these years. The average dividend for the eight years was something less than 4 per cent. The year 1919 proved to be an extremely profitable year to this company and in the cement industry generally. The war restrictions had been removed on building and transportation. The natural result took place. Building materials were in great demand, and prices soared. Fictitious values prevailed for these commodities, and corresponding fictitious values attached to the plants, business, and stock of these and other industries.

Plaintiff's liability to taxes and the basis for determining the gain or loss on the transaction under consideration is governed by section 202 of the Revenue Act of 1918 (40 Stat. 1060), which provides as follows:

"(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be— (1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and (2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged."

Plaintiff's stock had no standard and general market price in the sense of stock that has been established on the market by numerous and continued sales thereof. The sales of the stock of this company were comparatively few.

From what has been said, the finding is deduced that the fair market value of the stock acquired prior to March 1, 1913, is $100 per share for purposes of taxation, and that the value of the 120 shares received in 1918 by inheritance may be considered only at par value.

This stock was exchanged for cash at par value, plus 296 shares of the common stock of the Lasalle Cement Company. The gain to plaintiff by this transaction, under the reasoning adopted and the conclusion arrived at, is 296 shares of the stock of the Lasalle Cement Company of the par value of $100 per share.

There is no evidence tending to fix the market price or value of the common stock of the Lasalle Cement Company before the court, save and except that the contract between the parties for the purpose of the sale and exchange, fixed a value per share as equal to the value per share of the Ironton Portland Cement Company.

Considering the conditions at the time of the sale, the confidence of the public in the future of this and like business, the fictitious and speculative values, and the urgency of the representative of the Lasalle Cement Company in purchasing the business of the Ironton Company, it would not be extraordinary for the purchasing company to offer and pay cash at par and half a share of its own stock for each share of the purchased stock. The business expediency of such a transaction, considering the surrounding circumstances, would seem to be not unusual, but quite natural. There is no proof, therefore, from the standpoint of the value of the Lasalle Cement Company's stock, that may be applied to bring forth a profit or a lack of profit in the transaction. Even if it were otherwise, that question is not in the case, and it is noticed that no such claim was made to the tax officials in the application for the refund.

The cost price of the 350 shares acquired by purchase subsequent to March 1, 1913, is $35,585. The cost price of the 122 shares acquired prior to March 1, 1913, is $12,200. The 1918 market value of the 120 shares acquired by inheritance in 1918 was $12,000. Deducting this total of $59,785 from the price at which the entire 592 shares were sold at $200 per share as alleged by plaintiff and admitted by defendant, or a total of $118,400, leaves a taxable profit on the transaction in the amount of $58,615. The taxable profit as determined by the defendant and upon which tax was paid amounted to $61,250, making a difference in the amount of $2,635 upon which tax should not have been collected by defendant.

The total tax as assessed and paid, based upon profit determined by the defendant,

was $17,498.74. The amount of the tax that should have been assessed and collected by the defendant in conformity with this decision is $16,376.19, leaving a sum overpaid and refundable in the amount of $1,122.55, for which judgment may be entered for the plaintiff, plus interest from January 7, 1926, as provided for by section 615(a) of the Revenue Act of 1928 (28 USCA § 284).